**Affirmed and Memorandum Opinion filed August 30, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

———————————

## NO. 14-11-00377-CR

———————————

### SHARON LYNN ALANIZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause No. 10CR1473**

## MEMORANDUM OPINION

Appellant, Sharon Lynn Alaniz, appeals her conviction for aggravated assault with a deadly weapon. In four issues, she argues that she received ineffective assistance of counsel. We affirm.

### BACKGROUND

On May 16, 2010, Colin Ryan hosted a barbecue at his house in Galveston, Texas. Some of the guests were sitting in lawn chairs in front of the house. Appellant arrived uninvited and asked the guests for a ride home. None of the guests knew who she was. One of the guests asked her to leave, and she became angry and struck him in the face.

Ryan called 9-1-1 and another guest called a cab for appellant. When the cab arrived, the guests encouraged appellant to leave. Appellant struck one of the guests escorting her to the cab. He slapped appellant in return. After some verbal altercations between appellant and the guests, appellant eventually got into the cab. Before the door closed, appellant yelled that she would return with her family. In the cab, she told the cab driver she would return with her family and "f_ _ _ them up."

About half an hour after leaving the party, appellant returned with a group of four men. One of the guests called everyone inside, but Ryan remained outside, sitting on a chair. Appellant asked, "Where is my white boy?" Ryan started making a phone call, and appellant asked if he was calling the police. The men surrounded Ryan's chair and tipped it backwards. Appellant lunged towards Ryan, striking his head with a brick. Ryan fell backwards in his chair to the ground, while appellant and two men continued striking him. One of the guests, Lee Brooks, pulled one of the men away from Ryan and pushed him onto the street. Two other men quickly surrounded Brooks, hitting him on the temple with a brick and stabbing him three times in the back. Appellant instructed all the assailants to leave, and they ran back to their car down the street. Before leaving, appellant threw a brick through a window in Ryan's front door. One of the guests followed appellant to the car and memorized part of the license plate number.

Soon after the assailants left, police and paramedics arrived. Both Ryan and Brooks were unconscious, lying in pools of blood. Ryan's jaw was broken in three places and had to be wired shut for five weeks. Ryan testified he suffered permanent loss of sensation in his chin and misalignment of his teeth. He lost a month of work as a self-employed massage therapist and testified he had been "broke ever since."

Appellant was indicted for aggravated assault with a deadly weapon. After listening to the testimony of the party guests, the police officers, and the doctor treating Ryan, the jury found appellant guilty and assessed punishment at five years' confinement. Appellant did not file a motion for new trial. This appeal followed.

## ANALYSIS

In four issues, appellant asserts she received ineffective assistance of counsel. First, appellant argues that trial counsel provided ineffective assistance because during voir dire, he, in effect, exercised only four peremptory challenges out of the ten allowed. In her second and third issues, appellant argues that trial counsel provided ineffective assistance because he "opened the door to extraneous offenses" allegedly committed by appellant. Fourth, appellant argues that trial counsel provided ineffective assistance considering the totality of the circumstances.

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in state criminal proceedings. *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *see also Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To establish ineffective assistance of counsel, appellant must show that (1) her counsel's representation fell below the standard of prevailing professional norms, and (2) but for counsel's deficiency, there is a reasonable probability that the result of the trial would have been different. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 686–89 (1984)). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *Id.*

In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Lopez*, 343 S.W.3d at 142; *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. We review the effectiveness of counsel in light of the totality of the representation and particular circumstances of

3

each case. *Lopez*, 343 S.W.3d at 143; *Robertson*, 187 S.W.3d at 483; *Thompson*, 9 S.W.3d at 813.

When, as in this case, there is no proper evidentiary record developed at a post-conviction hearing, it is extremely difficult to show trial counsel's performance was deficient. *Thompson*, 9 S.W.3d at 814 ("An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct."); *Jagaroo v. State*, 180 S.W.3d 793, 797 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see also Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Trial counsel may have had a specific strategy for his conduct, and a reviewing court may not speculate on trial counsel's motives in the face of a silent record. *Thompson*, 9 S.W.3d at 814. In our review of counsel's conduct, we should be hesitant to designate any error as per se ineffective assistance. *Id.* at 813. However, it is possible that a "single egregious error of omission or commission by . . . counsel constitutes ineffective assistance." *Id.*; *see also Lopez*, 343 S.W.3d at 143 ("While a single error will not typically result in a finding of ineffective assistance of counsel, an egregious error may satisfy the *Strickland* prongs on its own."). An appellate court is not required to indulge in speculation concerning trial counsel's decision making process or to imagine why counsel failed to act in a particular manner. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

## A. Peremptory Challenges

First, appellant argues that trial counsel was ineffective because he used only six peremptory challenges out of the ten allowed, and two of the six challenges were a "nullity and an absurdity" because they were lodged against two venire members who were too far down on the list to be reached. Appellant argues that trial counsel was

simply ignorant of criminal procedure, and speculates that trial counsel may have been distracted by personal problems, pointing this Court to fact sources outside of the record. Appellant does not cite any authority that requires counsel to exhaust all ten peremptory strikes. Appellant does not argue that there were objectionable members on the jury.

The record of voir dire indicates that trial counsel actively participated in voir dire and asked a number of questions to the panel members.[1] In his examination of one potential juror, trial counsel discovered that panel member would give more credibility to a police officer's testimony and believed police officers incapable of lying. The trial court later struck this panel member for cause.[2] Additionally, in this same line of questioning, trial counsel discovered potential bias in panel member 25. When asked if he would give greater credibility to a police officer, panel member 25 stated that he would "in the sense that a police officer is trained to notice details." Panel member 25 qualified his answer when asked:

> [Trial Counsel]: Okay. And what if the evidence showed that he fell below that standard? Would you still give that greater weight or would you just cut it the other way?

> [Panel Member 25]: Yeah. I mean, I have to look at the evidence. If the evidence shows that he did not meet the standard, then I'd have to give that consideration.

Trial counsel used one of his peremptory strikes against panel member 25.

The record further reflects that the prosecution requested and was denied strikes for cause based upon numerous potential jurors who indicated that they would not convict unless the deadly weapon, the brick, was introduced. As such, these potential jurors remained in the pool from which appellant's counsel made his strikes.

---

[1] Trial counsel's voir dire examination is twenty-seven pages in length.

[2] In fact, we note that the trial court struck several potential jurors on its own motion based upon the voir dire questioning.

In short, there is no testimony with regard to trial counsel's strategy for using fewer than all of the peremptory strikes. There is no evidence to indicate that trial counsel was in fact ignorant of how many strikes he was allowed to use or that he was distracted by issues in his personal life. To the contrary, the record reflects that the trial court provided both sides with a strike list that "showed where to stop in terms of [counsel's] ten strikes each." Because the record is silent, in the case before us, appellant has not overcome the presumption that trial counsel had a sound trial strategy. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (concluding failure to exercise peremptory strikes or to ask questions at voir dire was not ineffective assistance of counsel where record was silent as to counsel's trial strategy); *Lopez*, 343 S.W.3d at 143 (holding there was no ineffective assistance of counsel where the record was silent as to counsel's trial strategy and where any reasonably sound strategic motivation could be imagined).

## B. Cross-Examination of Patrick Waugh

Second, appellant argues that the elicitation of testimony from Patrick Waugh about an extraneous offense was so clearly based on unsound trial strategy as to be ineffective assistance, per se. While cross-examining Waugh, one of the party guests, trial counsel elicited testimony about what occurred prior to appellant's appearance at the party:

[Trial Counsel:] There were two separate incidents; is that correct?

[Waugh:] Two separate incidents?

Q. One incident that occurred in the morning -- I mean, earlier in the evening and one that occurred later that night.

A. Well, there was another incident before she walked up.

Q. That (sic) was an incident before she walked up?

A. Yes.

Q. What was that incident?

A. A young man came down the sidewalk with a 2-by-4 or big stick looking for a group of people that had broken into their cars at The Spot and stole their laptops.

Q. You're not saying that that had anything to do with her; is that correct?

A. Well, later we found out it was her. And they lost the tapes at The Spot.

Q. How did you find out it was her?

A. Well, because we have been talking to detectives and everybody else and they -- they said it was her and a friend or something was -- that had been breaking into cars.

Q. Who told you that?

A. I can't remember exactly. I think the owner of The Spot maybe.

Q. What detective told you that?

A. I don't know what detective told me that.

Q. Didn't nobody (sic) tell you that?

A. I'm not sure.

Q. That's what I thought….

Eliciting testimony about prior crimes is not per se ineffective assistance of counsel. *See Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010) (court is "hesitant to designate any error as per se ineffective assistance of counsel as a matter of law"). In one case cited by appellant, the Court of Criminal Appeals held a lawyer's elicitation of testimony about prior crimes constituted ineffective counsel. *Robertson v. State*, 187 S.W.3d 475, 486 (Tex. Crim. App. 2006). However, unlike the instant case,

*Robertson* involved post-trial testimony from trial counsel explaining the reasoning for his actions, which was based on a misunderstanding of the law. In contrast, the Court of Criminal Appeals held introducing extraneous crimes did not establish ineffective assistance of counsel, per se, in *Ex parte Ellis*, 233 S.W.3d 324, 332–36 (Tex. Crim. App. 2007) (reviewing testimony from trial counsel about reasoning for eliciting such testimony, and concluding that extraneous crimes testimony "served a strategic purpose" and was based on "sound trial strategy" even though "risky").

In the present case, it is not clear that trial counsel purposely elicited testimony about the extraneous crimes. It is possible that trial counsel had a different incident in mind when he asked Waugh about "two separate incidents," and when Waugh responded with information about the car break-ins and laptop thefts at The Spot, trial counsel clearly attempted to establish that appellant was not involved.[3] There is no record about the reasons for trial counsel's elicitation of this testimony from Waugh, and we will not speculate. *See Thompson*, 9 S.W.3d at 814.

### C. Cross-Examination of Officer Paige

Third, appellant argues that "[o]nce again, trial counsel was obviously attempting to hurt his client by bringing in extraneous offenses." While cross-examining Officer Paige, trial counsel again began to elicit testimony about the extraneous offenses:

[Trial Counsel:] … Dennis Bird? Who is Dennis Bird?

[Officer Paige:] He owns The Spot Restaurant.

Q. And why did you talk to him?
A. I was trying --

[State]: Your Honor, may we approach?

---

[3] We note that one defense theory at trial appears to have been that the State's witnesses had conspired to testify falsely against appellant as part of an alleged "cover-up" of an assault against appellant by one of the witnesses.

8

THE COURT: Okay.

(At the bench, on the record)

THE COURT: [trial counsel], your question is about to open a can of worms about an extraneous offense that happened at The Spot. Am I correct about that?

[State]: Yes, your Honor.

THE COURT: I don't know whether it's already been opened once.

[State]: Yes, your Honor.

THE COURT: Do you want to continue to open this can of worms about robberies or thefts at The Spot where your client has already been implicated as suspect of those thefts at The Spot?

[Trial Counsel]: It don't matter, your Honor.

THE COURT: Is that some kind of trial strategy?

[Trial Counsel]: It doesn't matter. I'm not concerned about that extraneous offense. She's not charged with that, your Honor. For the most part, I won't go too much further than that. I just wanted to know who was Dennis Bird. I don't think I had that information.

THE COURT: Well, actually you already received the answer to the question of who is Dennis Bird. . . .So, I'm going to caution you, unless--- you know, unless you have some kind of trial strategy, this appears to be a really poor line of questioning to go down.

[Trial Counsel]: Your Honor, I'll limit it right there.

THE COURT: Okay.

(Open court, Defendant and Jury present)

[Trial Counsel:] You talked to Orren Lee Brooks; is that correct?

9

[Officer Paige:] That's correct.

Q. And in your interview with Mr. Brooks, did he tell you that he had assaulted [appellant]?

A. I believe he did not tell me he assaulted her.

Trial counsel did not ask any further questions, or elicit any further testimony about the extraneous offenses.

Appellant appears to be arguing that because the trial court and the State attempted to limit any further testimony about the extraneous offenses, that trial counsel was clearly ineffective. This is despite the fact that trial counsel did not elicit any further testimony about those offenses. In fact, trial counsel's statements on the record appear to indicate that he had some strategy and reasoning behind the questions that he was asking. We simply do not know because there is no record about trial counsel's strategy. *See Thompson*, 9 S.W.3d at 814; *Jagaroo*, 180 S.W.3d at 797; *Bone*, 77 S.W.3d at 833.

### D. Totality of the Circumstances

Considering the totality of the circumstances surrounding the representation that appellant received, appellant asserts that she received ineffective assistance of counsel. Appellant points to each instance discussed in detail above and argues that when considered together, they demonstrate that trial counsel rendered ineffective assistance.[4]

---

[4] Under issue four, appellant also mentions that, at the beginning of the punishment phase, trial counsel moved for a mistrial based on his mistake in telling appellant that she was eligible to receive community supervision in this case, when, in fact, she was not. Trial counsel stated on the record that he had provided ineffective assistance of counsel because of his mistake about community supervision. The trial court denied appellant's motion for mistrial. On appeal, appellant does not assert that the trial court erred in denying the motion for mistrial, nor does appellant assert that trial counsel's mistake about community supervision constituted ineffective assistance of counsel. Rather, appellant mentions the incident for our consideration of the totality of the circumstances surrounding appellant's representation by trial counsel. We have considered the full record.

While trial counsel may have made mistakes, appellant is not entitled to error free representation. *See Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). Based on the record before us, appellant has not rebutted the strong presumption that her trial counsel's conduct was within the range of reasonable professional assistance. *See Lopez*, 343 S.W.3d at 142; *Robertson*, 187 S.W.3d at 483; *Thompson*, 9 S.W.3d at 813. Nor has appellant demonstrated that but for her trial counsel's alleged deficiencies, there is a reasonable probability that the result of the trial would have been different. *See Salinas*, 163 S.W.3d at 740. Accordingly, we overrule appellant's issues one through four.

We affirm the judgment.

/s/    Margaret Garner Mirabal
Senior Justice

Panel consists of Justices Frost, McCally, and Mirabal.[5]

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[5] Senior Justice Margaret Garner Mirabal sitting by assignment.